**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

AARON C. PORTER,

      Petitioner,

v.                                                                 Case No. 8:23-cv-441-JLB-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

**ORDER**

      Petitioner Aaron C. Porter, a Florida prisoner, filed a *pro se* Petition for Writ

of Habeas Corpus under 28 U.S.C. § 2254.  (Doc. 1).  Upon consideration of the

petition (*id.*) and the response in opposition (Doc. 32), the petition is denied.[1]

## I.    Background and Procedural History

      The State of Florida charged Porter and his co-defendant, Sabrina Gibbons,

with one count of armed robbery and one count of false imprisonment.  (Doc. 15-2,

Ex. 1 at 12-16).  Porter represented himself for most of the state court jury trial,

with attorney Christopher Boldt serving as standby counsel.  Near the end of the

State's case-in-chief, the trial court appointed Boldt as Porter's counsel of record.

(Doc. 15-2, Ex. 1a at 588–90).  Boldt served in this capacity for the rest of the trial.

      The jury convicted Porter as charged.  (Doc. 15-2, Ex. 1 at 86–87).  The state

trial court sentenced him to life imprisonment as a prison releasee reoffender.  (Doc.

_____

[1] Porter did not file a reply.

1

15-2, Ex. 1 at 110–16; Doc. 15-2, Ex. 1a at 749).  The state appellate court *per curiam* affirmed Porter's convictions and sentence.  (Doc. 15-2, Ex. 5).  Porter unsuccessfully sought postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Doc. 15-2, Exs. 17–20; Doc. 15-3, Exs. 21–24, 26, 27, 32–37; Doc. 15-4, Exs. 40–45).  The state appellate court *per curiam* affirmed the denial of relief. (Doc. 15-4, Ex. 48).

## II.    Factual Summary[2]

On July 30, 2010, Porter and Jesus Garza met online.  (Doc. 15-2, Ex. 1a at 197).  They exchanged cell phone numbers and texted each other that night. (*Id.* at 197–98).  Garza went to Porter's apartment in Tampa, Florida, after midnight. (*Id.* at 198–99).  Porter, Sabrina Gibbons, Marquell Drigo, and Dawane Wells were at the apartment.  (*Id.* at 200–03).

Later that night, Garza agreed to drive an unidentified man home.  (*Id.* at 203).  Porter warned Garza that the man was planning to rob him, so Garza went on the drive with them.  (*Id.* at 205).  When the other man got out of Garza's truck, Porter chased him away.  (*Id.* at 205–06).  On the way back to the apartment, they stopped at a convenience store.  (*Id.* at 206–07).  Porter asked Garza to go inside the store to buy cigars, but Garza refused.  (*Id.*).  When they arrived back at the apartment, Porter took the keys from the ignition of Garza's truck and said they needed to talk.  (*Id.* at 207–08).  Inside the apartment, Porter said that Garza did

---

[2] This summary is based on the trial transcript and appellate briefs.

not seem to appreciate what Porter had done for him, and Porter decided to teach Garza a lesson. (*Id.* at 208).

Porter asked Garza for his debit card so that Sabrina Gibbons could use it to buy the items that Porter had wanted. (*Id.* at 208–09). When Garza refused, Porter told Gibbons to go into another room and get a gun. (*Id.* at 209). Gibbons brought the gun to Porter, who showed Garza that it was loaded. (*Id.* at 209–10). Garza gave Porter his debit card. (*Id.* at 210–11). At Porter's direction, Gibbons went to an ATM to withdraw money from Garza's account. (*Id.* at 211).

Gibbons called Porter from the ATM to ask for the PIN, and Porter pointed the gun at Garza's head and told Garza that he had "better have" the correct PIN. (*Id.*). Porter and another man at the apartment, Marquell Drigo, beat and hit Garza. (*Id.* at 210–11, 216). Drigo also copied Garza's personal information from items in his wallet. (*Id.* at 221). Porter took paperwork from Garza's truck before coming back into the apartment. Once inside the apartment, Porter punched Garza in the mouth. (*Id.* at 222–23).

Early the next morning, on July 31, 2010, Porter let Garza go after having him touch all the doorknobs in the apartment to ensure that he left his fingerprints. (*Id.* at 224). Porter kept Garza's cell phone and told Garza that if he involved the police, Porter would tell them that Garza raped Gibbons. (*Id.* at 223–24). But one of Garza's friends convinced him to go to the police anyway. (*Id.* at 226–27). Garza showed the police a printout of Porter's online profile. (*Id.* at 227–28).

3

At trial, Porter testified that Gibbons and Dawane Wells invited Garza to the apartment as their guest.  (*Id.* at 647–48).  Porter testified that Garza, who was intoxicated, went into a separate room with Gibbons.  (*Id.* at 654–55).  They exited the room, arguing over the money Garza owed Gibbons.  (*Id.* at 655–56).  Later, Porter told Garza that he needed to pay Gibbons and that if he did not do so, Porter would tell the police that Garza raped Gibbons.  (*Id.* at 656–57).  Garza gave Gibbons his debit card, and she went to the ATM.  (*Id.* at 658).  Porter denied having a gun or hitting Garza.  (*Id.* at 657).

## III.    Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding.  *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009).  Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Id*. at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id*. at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

Furthermore, when reviewing a claim under section 2254(d), a federal court must presume that any "determination of a factual issue made by a State court" is correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).

## B. Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687–88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id*. A showing on only one prong will not support an ineffective assistance claim. *Id*. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.").

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." *Id*. at 688. In reviewing counsel's performance, a court must adhere to the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id*. at 689 (citation omitted). A court must "judge the reasonableness of counsel's challenged conduct on

6

the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Proving *Strickland* prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

### C. Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b)(1). Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995). The petitioner must apprise the state court of the federal constitutional issue, not merely the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732, 735–36 (11th Cir. 1998). Under the similar doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

A petitioner can avoid the application of the exhaustion or procedural default rules by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. *Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner

"must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, a petitioner must demonstrate a reasonable probability that the outcome of the proceeding would have differed.  *Crawford v. Head*, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## IV.    Discussion

### A. Ground One

Porter contends that the state trial court judge violated his federal rights to due process and a fair trial by interrupting him, berating him, and displaying a "general air of disdain" for him while he was representing himself at the jury trial. (Doc. 1 at 9).  Porter asserts that the judge's remarks "prejudiced [him] in the eyes of the jury." (*Id*. at 12).  He further argues that the judge's comments "crossed the line by indicating partiality, or by ridiculing or showing disfavor toward [Porter] in the jury's presence.  The court did not appear to be neutral." (*Id*. at 26).

Porter acknowledged in his appellate brief that because he did not object in the trial court, his claim could properly be raised on direct appeal only if the errors were "fundamental." (Doc. 15-2, Ex. 2 at 12–13); *see J.B. v. State*, 705 So. 2d 1376, 1378 (Fla. 1998) ("Generally, to raise an error on appeal, a contemporaneous

8

objection must be made at the trial level when the alleged error occurred. . . . Only when error is fundamental can the error be raised on appeal in the absence of a contemporaneous objection.").

On direct appeal, the State argued that Porter failed to preserve his claim for appellate review by failing to object at trial. (Doc. 15-2, Ex. 3 at 4). The State also argued that Porter failed to show fundamental error. (*Id*. at 4–6). Respondent contends that the state appellate court's silent decision is presumed to rest on the procedural bar asserted by the State.

A state court's resolution of a petitioner's federal constitutional claim on state procedural grounds precludes federal review if the state procedural ruling rests on an "independent and adequate" state law ground. *Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1212 (11th Cir. 2009); *see also Kimbrough v. Sec'y, Fla. Dep't of Corr.*, 809 F. App'x 684, 691–92 (11th Cir. 2020); *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). "[T]he adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment" disposing of a federal claim. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989). The State's assertion that Porter failed to preserve his claim, and Porter's acknowledgment that he did not do so, indicate that the state appellate court's decision likely rested on this state law procedural bar. *See Hernandez v. Sec'y, Dep't of Corr.*, No. 23-11878, 2026 WL 507311, at *4 (11th Cir. Feb. 24, 2026). Porter has not shown that an exception applies to excuse the resulting procedural default.

9

Even assuming that the state appellate court ruled on the merits of Porter's federal due process claim, its decision was not unreasonable.  Porter cites judicial remarks made at different stages of the proceedings.  First, Porter refers to several comments the judge made before or during trial, but outside the jury's presence. Porter has not demonstrated how such comments, even if improper, "prejudiced [him] in the eyes of the jury."  (Doc. 1 at 12).  Thus, the state appellate court reasonably denied any federal due process claim based on remarks made outside of the jury's presence.  *See United States v. Hill*, 643 F.3d 807, 845 (11th Cir. 2011) ("Because a clear effect on the jury is required to reverse for comment by the trial judge, [a court] will only consider the trial court's comments that were made in the presence of the jury." (internal quotation marks and citation omitted)).

Next, Porter identifies several judicial remarks during jury selection.  One instance involved Porter questioning a potential juror who had already said that she could not be fair and impartial:

THE DEFENDANT: [] Your dad was robbed at gunpoint.

Is there anything with respect to the fact that your dad was robbed at gunpoint and the victim –

THE COURT: [The prospective juror] has already stated she cannot be fair and impartial.

Have I correctly summarized your statements?

PROSPECTIVE JUROR []: Yes.

THE COURT: Has anything changed in the last 30 minutes?

THE DEFENDANT: Your Honor, I think the defendant is entitled to the same respect that you gave the State.  And I'm entitled to make

10

sure that each and every one of these last individuals can sit and be fair and impartial. There's no rush when my life is on the line.

THE COURT: There is no rush. However, let me say, this, Mr. Porter, the defendant in this case: There's have been [sic] several misstatements during your voir dire of this particular jury panel without objection. I note specifically that Mr. Boldt, who is standby counsel, has absolutely no affiliation with Public Defender's Office, contrary to statements you made before to this jury panel.

Mr. Boldt, for whom do you work, sir?

MR. BOLDT: Your Honor, I'm a court-appointed attorney. I work for the Office of Criminal Conflict and Civil Regional Counsel.
. . .

THE COURT: Very well.

Mr. Porter, I have corrected the record.

THE DEFENDANT: Judge, you're misleading the jury on the facts –

THE COURT: Take the jury out right now.

Mr. Porter, stop right there. The jury will be afforded a 15-minute recess for comfort purposes.

(Doc. 15-2, Ex. 1a at 117–19).

Later during jury selection, Porter asked the panel about their ability to fairly consider his co-defendant Sabrina Gibbons's background and motive "with respect to her testimony here today." (*Id.* at 130). A prospective juror said that he did not understand the question. (*Id.*). Porter stated:

THE DEFENDANT: Basically what I'm saying, sir, obviously, if this individual's going to testify, there's going to be some background information brought out to her truthfulness to testify or willingness to testify as opposed to was she offered anything to testify. Obviously, there's a motive for her testifying today.

THE COURT: You're not testifying, are you, Mr. Porter?

11

THE DEFENDANT: No, Your Honor.

THE COURT: You're to ask questions, not make statements, sir.

(*Id*. at 130–31).

Porter then asked the panel, "Does anyone here agree or disagree that the State must prove its case beyond a reasonable doubt?" (*Id*. at 131). The judge stated:

> THE COURT: That is the law. That is the instruction that I have given to this jury panel. And this jury panel has assured me, all 30 members of this panel, that they could do so and would hold the State to its burden.
>
> Has anyone changed their mind in the last 40 minutes, raise your hand? No hands are raised.

(*Id*. at 132).

Most of the judicial remarks Porter cites, however, were made during witness testimony at trial. When victim Jesus Garza testified, the State sought to introduce a photograph of Marquell Drigo. Porter objected, and the state trial court judge asked him for the basis of his objection:

> THE COURT: What basis?
>
> THE DEFENDANT: Your Honor, this witness was basically –
>
> THE COURT: No, no. What legal basis [?] I'm referring to Chapter 90 of the Florida Statutes.
>
> THE DEFENDANT: I don't see how this picture is admissibility [sic] as to anyone who did anything to this individual.
>
> THE COURT: Your objection is overruled. Do you have any other objection[?]

12

THE DEFENDANT: The fact that –

THE COURT: No. Do you have any other legal objections?

THE DEFENDANT: Let me give you my objections?

THE COURT: No, because it's not a legal objection.

THE DEFENDANT: How do you know that without hearing it out?

THE COURT: Here's what I'm going to do: I'm going to give to Master
Deputy Alexander Chapter 90 of the Florida Statutes.  He's going to
hand you that so that you can turn to Chapter 90; that is the evidence
code, as you know, and if you have any lawful objections within Chapter
90 –
. . .

THE DEFENDANT: We'll proceed.

THE COURT: I'll take that as a waiver of any further objections.

(*Id.* at 217–218).

Later, Porter objected when the State sought to introduce a copy of his online

profile, which Garza had printed and given to police:

THE COURT: Mr. Porter, any objection?

THE DEFENDANT: Objection, Your Honor.

THE COURT: Basis?

THE DEFENDANT: I'm not sure where these photos came from.  I'm
not sure this individual can testify to the photos that he printed at a
friend's house and bring this to court and expect the Court –

THE COURT: Okay. "The I'm not sure" objection is overruled. Do you
have any lawful objection[?]

THE DEFENDANT: Thank you, Your Honor.

THE COURT: Thank you. Move on.

13

(*Id.* at 228–29).

On cross-examination, Garza said that one of Porter's questions confused him.  (*Id.* at 248).  Porter responded, "I don't want you to be confused. You didn't seem confused a moment ago when you were giving testimony."  (*Id.*)  The trial court noted, "Mr. Porter – Mr. Porter, that is argumentative.  This is your opportunity to ask this witness questions, sir."  (*Id.* at 249).

Later on cross-examination, Garza testified that Marquell Drigo was the second person who hit him:

> Q:  And [Drigo] was the second person?
>
> A: Yeah.
>
> Q. Because you gave a statement to some –
>
> THE COURT: Now, wait a minute. That's not a question, Mr. Porter. This is not your opportunity to testify.  I expect properly phased questions of this witness.  Ask one, sir.

(*Id.* at 264–65).

Porter later asked Garza about what he observed from outside Porter's apartment:

> Q: Was the door open? Was the door closed? Was anyone outside when you arrived back?
>
> A: The windows and the door was [sic] open.  Everything was visible from standing outside.
> . . .
>
> Q: You said that everything was open, visual from the street. Quite obviously you wasn't [sic] secluded.  Let's move on here.
>
> THE COURT: Is that a question, Mr. Porter? It does not appear to be a question. Question, answer; question, answer."

14

BY THE DEFENDANT:

Q: You said it was visual from the street, right?

A: Not from the street. I mean, you could see – from within a few feet of the doorway you could see inside the house.

Q: You're changing it.

A: No, I never said –

THE COURT: Mr. Porter, that's a comment on the evidence, which is not allowed. Questions.

(*Id.* at 272–73).

Porter also cross-examined Garza about the use of intoxicants, and referenced a police report:

Q: [] Do you recall giving a statement to the police that everyone was drinking Heineken and smoking weed except for me?

A: I don't smoke so I don't know where you got that from.

Q: Answer the question, please, Mr. Garza.

Did you tell police that everyone was drinking and smoking weed except you? 'Cause that detective's going to take the stand –

THE COURT: Wait a minute, Mr. Porter. Questions, as I've repeatedly instructed you.
. . .

Q: You did have some [beer], okay.

Is there any reason – I'm just trying to understand –

THE COURT: Mr. Porter, you may not cross-examine Mr. Garza on something he, Mr. Garza, did not write. Move on.

(*Id.* at 280–81).

15

Sabrina Gibbons testified for the State and stated that she and Porter were first cousins and had known each other for 28 years. (*Id.* at 479). When Porter cross-examined Gibbons, he asked her how long she had known him. (*Id.* at 505). The state trial court stated, "Twenty-eight years. Next question." Porter repeated the question, after which the trial judge said, "Twenty-eight years. Already asked and answered. Next question." (*Id.* at 505–06).

The trial court told Porter to "speak up" when he cross-examined Gibbons. (*Id.* at 552). A short time later, as Porter asked Gibbons about the charges she was facing from this incident, Porter stated:

> Q: It seems like you may be mistaken with respect to –
>
> THE COURT: Well, now, wait a minute. You can't tell the witness they're mistaken, Mr. Porter. That is absolutely improper, contrary to Florida law, will not be tolerated. Don't do that.

(*Id.* at 555).

Porter called Gibbons as a defense witness. He asked her "what, if anything, took place" when Garza arrived at the apartment, and Gibbons stated that she did not understand the question. (*Id.* at 572). The trial court, referring to the testimony Gibbons gave as a prosecution witness, stated:

> Mr. Porter, Ms. Gibbons has already testified extensively on direct and cross-examination regarding the events of July 31. As such, these questions, at least that question, have been asked and answered. Go on to a new line of questioning.

(*Id.*).

Lastly, Porter called Gibbons as a defense witness and asked her about certain photographs:

16

Q: Isn't it true that those pictures were missing[,] Miss Gibbons?

THE COURT: Mr. Porter, you're conducting direct examination. As such, as I previously instructed you outside the presence of the jury, you are not allowed to ask leading questions absent some exception to the normal rules regarding direct examination. Rephrase your next question.

(*Id.* at 576).

The Due Process Clause requires "a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (internal quotation marks and citation omitted). "In other words, due process imposes a 'neutrality requirement.'" *United States v. Cortero-Roman*, No. 22-13930, 2025 WL 1662612, at *5 (11th Cir. June 12, 2025) (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980)). Due process encompasses the right to "a fair trial by a panel of impartial, indifferent jurors." *Morgan v. Illinois*, 504 US. 719, 727 (1992) (internal quotation marks omitted).

The state appellate court reasonably concluded that Porter did not establish any federal due process violation that amounted to fundamental error. Here, the state appellate court rejected Porter's claim in an unelaborated *per curiam* affirmance, and there is no state trial court ruling to which this Court can look to ascertain reasons for the decision. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (explaining that when the relevant state-court decision is not accompanied by reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court

17

decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning"). Therefore, this Court must "determine what arguments or theories supported . . . or could have supported the state court's decision." *Richter*, 562 U.S. at 101–02.

Porter contends that the state trial judge's remarks "indicat[ed] partiality" and "show[ed] disfavor." (Doc. 1 at 26). He similarly contends that the judge "did not impart an air of impartiality" and "did not appear to be neutral." (*Id*. at 24, 26). But Porter does not clearly allege that the trial court was, in fact, biased against him. To the extent that Porter's claim is based on an appearance of judicial bias, he cannot show that the state appellate court's rejection of his claim was contrary to or involved an unreasonable application of clearly established federal law. *See United States v. Rodriguez*, 627 F.3d 1372, 1382 (11th Cir. 2010) (stating that the Supreme Court has not clearly established that "an appearance of bias is enough by itself to be a constitutional violation").

Nor has Porter shown any other basis for relief. A judge exercises discretion when presiding over a trial because the judge must maintain "reasonable control over the mode and order of interrogating witnesses and presenting evidence in order to ensure that evidence is presented effectively for the ascertainment of truth, time is conserved, and witnesses are protected from harassment." *Hill*, 643 F.3d at 845 (internal quotation marks and citation omitted).

Porter has not shown that the state trial court judge abused his discretion in a manner that violated his due process rights. Consequently, he has not established a

fundamental error that would have afforded him relief on appeal. *Montgomery v. Noga*, 168 F.3d 1282, 1294 (11th Cir. 1999) (describing fundamental error justifying reversal as error that results in a miscarriage of justice). Many of the state trial judge's comments served to prevent Porter from making statements/testifying and improperly questioning witnesses, rather than preventing him from asking witnesses appropriate questions. Some of the judge's comments also sought to avoid repetition, ensure that the trial progressed, or correct misstatements of law or fact. The state court judge based his comments on the law and procedures applicable to trial proceedings. The record indicates that Porter understood he was subject to these authorities while representing himself. When the state trial court appointed Boldt as standby counsel, Porter said that he understood Boldt's caution that Boldt would not file motions for Porter and that "standby is beyond limited, it is virtually just a resource available to [Porter] and to the court to facilitate an orderly proceeding." (Doc. 15-2, Ex. 1 at 184). Additionally, the judge warned Porter during voir dire, out of the jury's presence, that he would receive no latitude on the basis that he was not an attorney and that he was subject to Florida law and court rules. (Doc. 15-2, Ex. 1a at 128).

Indeed, "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta v. California,* 422 U.S. 806,834 n.46 (1975). And a trial judge must "exercise reasonable control" over the questioning of witnesses to "facilitate, through effective interrogation and presentation, the discovery of the

19

truth"; "[a]void needless consumption of time"; and "[p]rotect witnesses from harassment or undue embarrassment." Fla. Stat. § 90.612(1)(a)–(c).

The judge's comments were made as part of this obligation to exercise control over the trial. For instance, a trial court may exclude cumulative evidence to ensure an efficient trial. *Knight v. State*, 324 So. 3d 64, 65-66 (Fla. 5th DCA 2021). When such evidence "calls for a mere repetition of testimony," a trial court can limit an attorney's repetitive questioning. *Peterson v. State*, 154 So. 3d 275, 283 (Fla. 2014). Similarly, an attorney is prohibited from asking improper or repetitive questions during voir dire. *King v. State*, 790 So. 2d 1253, 1254-55 (Fla. 5th DCA 2011). Also, when objecting, an attorney must state a specific ground for the objection if the specific ground is not apparent from the context. Fla. Stat. § 90.104(1)(a), Fla. Stat. Attorneys cannot offer their personal opinions as facts; instead, they must ask questions of the witnesses. *Kaas v. Atlas Chemical Co.*, 623 So. 2d 525, 525-26 (Fla. 3d DCA 1993). And, generally, an attorney may not ask leading questions of a witness on direct or redirect examination. Fla. Stat. § 90.612(3). Thus, the trial judge's comments and corrections were based on applicable Florida law and procedure.

Even if the trial judge seemed frustrated at times, Porter has not established a due process violation. "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Judicial remarks can support a claim of partiality if they indicate "an opinion that derives from an extrajudicial source" or if they "reveal such

20

a high degree of favoritism or antagonism as to make fair judgment impossible." *Id*. But "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to show bias or partiality. *Id*. at 555–56. This is true for remarks made during the ordinary efforts of a judge, "even a stern and short-tempered judge," at courtroom administration. *Id*. at 556. Porter has not shown that the identified judicial comments supported a claim of bias under this standard.

Additionally, the judge instructed the jury to base its decision solely on the evidence and the law:

> Your verdict should not be influenced by feelings of prejudice, bias or sympathy. Your verdict must be based on the evidence and on the law contained within these instructions.

> Deciding a verdict is exclusively your job. I cannot participate in that decision in any way, and I ask anything that I may have said or done that made you think I preferred one verdict over another to be disregarded entirely.

(Doc. 15-2, Ex. 1a at 732).

The jury is presumed to have followed this instruction. *See United States v. Grushko*, 50 F.4th 1, 15 (11th Cir. 2022). Under these circumstances, Porter has not shown any violation of his due process rights, and, therefore, no constitutional violation that resulted in fundamental error. The identified remarks do not indicate an extrajudicial source of information or "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555. Porter has not shown that the state appellate court's denial of his federal constitutional claim was contrary to or involved an unreasonable application of clearly established

21

federal law, or that it was based on an unreasonable factual determination. He is therefore not entitled to relief on Ground One.

### B. Ground Two

Porter argues that the state trial court violated his federal constitutional rights by failing to renew an offer of court-appointed counsel at a September 16, 2010, pretrial hearing at which Porter represented himself. Porter alleges that the court was required to renew the offer because the hearing was a "critical" stage of the proceedings. *See Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004) (stating that, under the Sixth Amendment, an accused who faces incarceration has the right to counsel at all critical stages of the criminal process).

Porter's claim is procedurally defaulted. When he raised his argument on direct appeal, Porter relied solely on Florida case law and the Florida Rules of Criminal Procedure. (Doc. 15-2, Ex. 2 at 34–36). Because Porter did not allege a violation of his *federal rights* or rely on *federal law* in presenting the claim to the state appellate court, he did not exhaust a *federal* claim. Porter cannot return to state court to bring a federal claim in a second direct appeal. *See* Fla. R. App. P. 9.140(b)(3). Porter's federal trial court error claim is therefore procedurally defaulted. He has not shown either cause and prejudice or a fundamental miscarriage of justice to excuse the default.

Even assuming that Porter's appellate brief exhausted a federal claim, the state appellate court reasonably denied it. A criminal defendant can waive his Sixth Amendment right to counsel if the waiver is knowing and voluntary. *Faretta,*

22

422 U.S. at 835.  On August 23, 2010, the state trial judge conducted a *Faretta* hearing after Porter stated his intention to proceed *pro se*.  (Doc. 15-2, Ex. 1 at 132). The judge's questions to Porter about his decision included whether his decision was made knowingly, intelligently, and voluntarily; whether anyone had threatened or coerced him; and whether he understood that self-representation came with dangers and disadvantages.  (*Id.* at 133–37); *see Faretta*, 422 U.S. at 835-36.  The judge granted Porter's request to proceed *pro se* and appointed an assistant public defender as standby counsel.  (*Id.* at 137).

Several weeks later, on September 16, 2010, the state trial court conducted the pretrial hearing, which is the focus of Porter's argument.  The trial court started by announcing that it was entering a written order denying Porter's earlier motion to disqualify the judge.  (*Id.* at 143).  The state court then noted that Porter was proceeding *pro se* and that his initial standby counsel, an assistant public defender, was with him.  (*Id.*).  Standby counsel informed the court that the Office of the Public Defender had learned of a potential conflict that would require that Office's withdrawal from Porter's case.  (*Id.*).  After addressing Porter's motion for a speedy trial and setting a trial date less than a month away on October 11, 2010, the court noted the urgency of reviewing the potential conflict, and standby counsel said that he would address it immediately.  (*Id.*, pp. 144–46).

Porter contends that the trial court was constitutionally obligated to renew the offer of court-appointed counsel before conducting this hearing.  He relies on *Traylor v. State*, 596 So. 2d 957 (1992), a decision of the Florida Supreme Court.

23

*Traylor* holds that, under the Florida Constitution, a trial court is required to renew the offer of court-appointed counsel to an unrepresented defendant at the start of each "crucial stage" of the proceeding, "where the defendant is unrepresented." *Id*. at 968.

But *Traylor* is not "clearly established federal law" for purposes of federal habeas review under the AEDPA. Porter has not identified any clearly established federal law—holdings of the Supreme Court of the United States—providing that the Constitution required the state trial court to renew the offer of counsel at this pretrial hearing.

The Supreme Court of the United States has not held that a renewal of the offer or a reaffirmation of a criminal defendant's decision to continue *pro se* is required at every hearing or event before trial. *See McClain v. Sec'y, Dep't of Corr.*, 855 F. App'x 610, 613–14 (11th Cir. 2021) ("The [federal] district court did not err in concluding the [state appellate court's] decision on this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. There is no clearly established Supreme Court law on when the Sixth Amendment requires an additional waiver of counsel, just that there are times when it may be necessary."); *United States v. Nunez,* 137 F. App'x 214, 215 (11th Cir. 2005) (concluding that the trial court was not required to *sua sponte* conduct another *Faretta* hearing at the start of trial, four months after the initial hearing, and stating, "[i]f we were to place upon the [trial] court an obligation to reassess its *Faretta* hearing decision, we would do so only on a showing of a substantial change

24

in circumstances since the initial hearing"); *Duncan v. Sec'y, Fla. Dep't of Corr.*, No. 3:18-cv-2099-MCR-GRJ, 2021 WL 4464431, at \*12 (N.D. Fla. Aug. 20, 2021), adopted by 2021 WL 4465996 (N.D. Fla. Sep. 29, 2021) ("Petitioner does not have a constitutional right to a renewed offer of counsel at all pretrial proceedings and during the evidentiary portion of trial.").

A waiver of the right to counsel may remain valid for subsequent proceedings. *See Nelson v. Alabama*, 292 F.3d 1291, 1296 (11th Cir. 2002) (stating that "the Supreme Court in *Faretta* did not set out any fixed time frame for the holding of the *Faretta* hearing it suggested" and finding that a defendant's initial waiver under *Faretta* remained valid several years later at resentencing given the trial court's reliance on the initial *Faretta* hearing, the defendant's representations to the court over time, and the defendant's representations and demeanor at the resentencing hearing); *United States v. McBride,* 362 F.3d 360, 367 (6th Cir. 2004) (adopting the rule that "a defendant's waiver of counsel at trial carries over to subsequent proceedings absent a substantial change in circumstances" and explaining that "[o]ther circuits have held that a valid waiver remains in effect at subsequent proceedings in the absence of an explicit revocation by the defendant or a change of circumstances that would suggest that the [trial] court should make a renewed inquiry of the defendant").

Here, the state trial court questioned Porter under *Faretta* about three and a half weeks before the September 16, 2010, speedy trial hearing. Additionally, Porter's first standby attorney was present at the hearing and discussed his

25

potential withdrawal due to a conflict.  Thus, the matter of whether Porter's court-appointed standby counsel would be able to continue in the case was brought to Porter's attention.  Porter has not identified clearly established *federal law* requiring a state trial court to renew the offer of counsel expressly or to conduct an additional *Faretta* inquiry under such circumstances.  Nor does Porter show any substantial change in his circumstances that would have compelled the state trial court to revisit his *pro se* status.

Thus, even if Porter's claim is not procedurally defaulted, Porter has not shown that the state appellate court's denial of his trial court error claim was contrary to or involved a reasonable application of clearly established federal law, or was based on an unreasonable factual determination.  He is therefore not entitled to relief on Ground Two.

### C. Ground Three

Porter asserts that the state trial court lacked subject matter jurisdiction and personal jurisdiction to hear his case.  He argues that the information did not charge him with a crime because it contained both his given name and an alias he used at the time of his arrest.  Porter alleges a violation of his federal due process rights.

The information, filed on August 13, 2010, named as defendants Sabrina C. Gibbons and Robert E. Gordon.  (Doc. 15-2, Ex. 1 at 12–16).  At an October 11, 2010 pretrial proceeding, the prosecutor informed the state trial court that the State believed the name Robert E. Gordon was likely an alias used by Porter.  (*Id.* at 179–

26

81).  Porter then admitted under oath that his legal name is Aaron Porter.  (*Id*. at 182).  The State amended the information that same day to correct Porter's name in the caption of the information.  (*Id*. at 12–16).  But the name was not corrected in the offense descriptions, which still alleged that Gibbons and "Robert E. Gordon" committed the offenses.  (*Id*. at 12–13).

Porter's federal due process claim is unexhausted and procedurally defaulted.  Porter did not allege a violation of his federal rights when he challenged the state trial court's jurisdiction in his state court petition for writ of habeas corpus.  (Doc. 15-5, Ex. 52).  Respondent also argues, and Porter concedes, that the state court dismissed Porter's jurisdictional claim on the basis that it was not cognizable in a habeas corpus proceeding.[3]  Respondent therefore contends that, even if Porter's state court habeas petition could be construed to raise a federal claim, his claim in this section 2254 proceeding is procedurally defaulted because the state court resolved it on an independent and adequate state procedural basis.  Porter has not shown that an exception applies to overcome the procedural default of his federal claim.

Even if Porter's federal due process claim were exhausted, it would not afford him relief.  Porter has not shown that any deficiency in the information deprived the state trial court of jurisdiction.  When considering the sufficiency of a criminal

---

[3] The order resolving Porter's state court habeas petition does not appear to be included in the state court record submitted in this case.  (*See* Doc. 15-5, Ex. 53).  But both parties agree that the claim was dismissed as non-cognizable in a habeas corpus proceeding.

information filed in a Florida court, "[t]he overriding concern is whether the defendant had sufficient notice of the crimes for which he is being tried." *McMillan v. State*, 832 So. 2d 946, 947–48 (Fla. 5th DCA 2002). Similarly, under federal law, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

When the State amended the information, it did not correct Porter's name in several places. But the wrong name was listed in the first instance because Porter misidentified himself as Robert E. Gordon at the time of his arrest. (Doc. 15-2, Ex. 1 at 179–80, 184–85). Moreover, Porter does not allege that the information failed to put him on notice that, regardless of whether his given name or his alias was listed, he was the person charged with the crimes alleged. Porter has not shown that the information was insufficient to charge him with committing felonies in Florida.

Because the information sufficiently charged Porter with committing felonies in Florida, the state circuit court had subject matter jurisdiction to hear his case. *See* Art. V, § 20(c)(3), Fla. Const. (providing that circuit courts "shall have exclusive original jurisdiction . . . of all felonies"); Fla. Stat. § 26.012(2)(d) (same); *Carbajal v. State*, 75 So. 3d 258, 262 (Fla. 2011) (stating that subject matter jurisdiction is the "[p]ower of a particular court to hear the type of case that is then before it or jurisdiction over the nature of the cause of action and relief sought" and that

28

"[b]ecause the information filed in this case charged Carbajal with multiple felonies, the circuit court had subject matter jurisdiction over Carbajal's case" despite an alleged defect in the charging document) (internal quotation marks and citations omitted)).  Accordingly, Porter does not show that he is entitled to federal habeas relief on Ground Three.

### D. Ground Four

Porter argues that his standby counsel, Christopher Boldt, was ineffective for "not being prepared to step in as appointed counsel during trial" and for failing to inform the trial court that he was unprepared.  (Doc. 1 at 38).  Porter also argues that after being appointed as counsel of record, Boldt provided ineffective assistance by not moving for a continuance.

The state court held an evidentiary hearing on Porter's claim.  Boldt testified that he was appointed as Porter's standby counsel very shortly before trial.  (Doc. 15-4, Ex. 44 at 6).  As standby counsel, Boldt testified, he could only serve as a resource for Porter.  (*Id*. at 6–7).  Therefore, Boldt explained, his limited ability to prepare before trial was driven by Porter's decision that Boldt continue in this restricted role, rather than being appointed as counsel.  (*Id*. at 6, 22).  Boldt testified that he was present for the entire trial and took contemporaneous notes, anticipating that he might become counsel of record.  (*Id*. at 7–8, 21).  Upon questioning from Porter's postconviction attorney, Boldt testified that it was possible he could have left the courtroom at some point during the trial, but also stated that he could not "imagine" doing so.  (*Id*. at 36, 59).

29

Boldt testified that the state trial court appointed him as the attorney of record near the end of the State's case after Porter had an outburst in the courtroom. (*Id.* at 14–15). After his appointment, Boldt testified, he moved for a mistrial on the basis that the jury was prejudiced by hearing the state trial court cite Porter for contempt during this incident. (*Id.* at 22–23, 51). The state trial court denied the motion for mistrial. (*Id.* at 19). Boldt testified that completing trial preparation, which would involve, for instance, taking depositions and litigating motions, would likely take several months. (*Id.* at 22–23, 51–53).

Boldt explained that he did not separately request a continuance because he believed the court would not grant a continuance of this length during the trial. (*Id.*). In other words, he believed that a mistrial was the only realistic way to secure the time needed to prepare. (*Id.*) Although he did not move for a continuance, Boldt asked the court for time to speak with defense witness Drigo and with Porter. (*Id.*) His request to recess for the day was denied, and the state trial court allowed him a one-hour break. (*Id.*).

At the postconviction evidentiary hearing, Porter testified that Boldt was not prepared to handle his case and that Boldt said he would move to continue the case. (*Id.* at 71).

The state postconviction court found that counsel did not perform deficiently. (Doc. 15-4, Ex. 45 at 17). The state court found Boldt's testimony to be credible. (*Id.* at 16). The state court also found that the record did not reflect Boldt's absence at any point in the trial. (*Id.*) Indeed, the state court found that counsel was

30

present throughout Porter's "entire trial and took contemporaneous notes to be prepared should he be appointed counsel of record." (*Id.*).  The state court noted that Boldt in effect sought a continuance through his motion for a mistrial, "which, if granted, would have given him the time necessary to conduct depositions, file and litigate motions, and prepare a defense." (*Id.* at 16–17).  The state court further found that Porter "consistently declined" the trial judge's offers of appointed counsel.  (*Id.* at 15–16).  The state court concluded that any limit on Boldt's ability "to depose witnesses, file motions, prepare a defense or otherwise prepare for trial are attributable to [Porter's] own actions." (Doc. 15-4 at 17).

Porter is not entitled to relief on Ground Four.  Initially, as Respondent notes, there is no constitutional right to standby counsel.  *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (stating that *Faretta* does not require a trial judge to permit "hybrid" representation); *United States v. Taylor*, 933 F.2d 307, 313 (5th Cir. 1991) (stating that, because of standby counsel's very limited role, "the assistance of standby counsel, no matter how useful to the court or the defendant, cannot qualify as the assistance of counsel required by the Sixth Amendment").  Therefore, Porter cannot show a deprivation of his Sixth Amendment right to effective assistance of counsel while Boldt was merely serving as standby counsel. But even considering these claims under *Strickland*, as the state court did, they do not warrant relief.  Nor is Porter entitled to relief on his claim that Boldt was ineffective after his appointment of counsel of record.

31

First, Porter does not rebut, by clear and convincing evidence, the presumption of correctness afforded to the state trial court's factual finding that counsel's testimony was credible. Whether a witness is credible is a finding of fact that a petitioner can rebut only by clear and convincing evidence. *See Whatley v. Warden, Ga. Diagnostic and Classification Ctr.*, 927 F.3d 1150,1175–77 (11th Cir. 2019) (stating that "credibility-based determinations are findings of fact" that are presumed correct and that when a petitioner "challenges state court rulings that rest on findings of fact," he must "rebut the presumption of correctness . . . with clear and convincing evidence" (internal quotation marks and citations omitted)). Porter has not made this showing.

The testimony that the state court found credible reflects that Boldt was present throughout the trial and took notes because he anticipated being appointed as counsel of record. But, before that appointment, Boldt's participation was severely limited. Despite the constraints inherent in this role, when Boldt was appointed, he had sufficient knowledge of the case to examine witnesses, challenge the State's objections to his questioning, and raise objections during the State's questioning. (Doc. 15-2, Ex. 1a at 621–42, 646–72). He also actively participated in the jury instruction charge conference and presented a closing argument, arguing that the State had not met its burden of proof. (*Id.* at 676–87, 701–12). Boldt was not ineffective for failing to prepare while he was standby counsel, or for failing to represent otherwise to the state trial court.

32

Furthermore, the state court reasonably determined that Boldt did not perform deficiently for failing to seek a continuance of the trial.  As noted, Boldt moved for a mistrial after his appointment.  When his motion for a mistrial was denied, Boldt concluded that the state trial court would not grant a month- or months-long continuance.  The state trial court's decision to allow only a one-hour break supports the conclusion that counsel reasonably believed that the court would not grant a continuance of any significant length.

Further, Porter has not shown how the outcome of the trial would likely have been different had Boldt successfully moved for a continuance.  He does not identify what other information Boldt would have learned, or how any such material would have changed the outcome of the trial.  Because the state court's decision did not involve an unreasonable application of *Strickland* and was not based on an unreasonable factual determination, Porter is not entitled to relief on Ground Four.

## V.     Certificate of Appealability

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Instead, a district court or court of appeals must first issue a certificate of appealability ("COA").  *Id.*  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To obtain a COA, Porter must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise.  *See Slack v. McDaniel,*

33

529 U.S. 473, 484 (2000). Porter has not made the requisite showing. Finally, because Porter is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

It is therefore **ORDERED** that Porter's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Porter and in Respondent's favor, to terminate any pending motions and deadlines, and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on March 31, 2026.

_____

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE